UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-cv-37-RJC

| | |
|---|---|
| LaQUEZ SIMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CHAD SHARPE, Corrections Officer ) | **ORDER** |
| at the Alexander Correctional Institution; ) | |
| JOHN DOE # 1, Corrections Officer at ) | |
| ACI; JOHN DOE # 2, Corrections Officer ) | |
| at ACI; JOHN DOE # 3, Corrections Officer at ) | |
| ACI; and JOHN DOE # 4, Corrections Officer ) | |
| at ACI, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court upon the following motions:

1. Plaintiff's Motion to Amend Complaint, (Doc. No. 12);

2. Plaintiff's Motion to Compel, (Doc. No. 13);

3. Plaintiff's Motion for Default Judgment, (Doc. No. 14); and

4. Plaintiff's second Motion for Appointment of Counsel, (Doc. No. 15).

**I.     PROCEDURAL BACKGROUND**

On March 24, 2010, Plaintiff filed a Complaint alleging that Defendants Chad Sharpe ("Sharpe") and John Does 1, 2[1], 3 and 4 subjected him to excessive force. (Doc. No. 1). Plaintiff filed a grievance detailing the incident, (Doc. No. 1-1), and alleges that as a result of his

---

[1] Although Plaintiff names John Does 1, 2, 3 and 4, neither his Complaint, (Doc. No. 1), nor his Motion to Amend Complaint, (Doc. No. 12), contain any allegations against John Doe 2.

grievance, Sharpe harassed and retaliated against Plaintiff. (Doc. No. 1 at 8).

After conducting an initial review of the Complaint and determining that Plaintiff's allegations were not frivolous, the Court entered an Order on September 13, 2010, directing Keith Whitener ("Whitener"), Chief Administrator at Alexander Correctional Institution ("ACI"), to make every reasonable effort to identify the John Does named in the Complaint and to provide the Court with a list of their names. (Doc. No. 8 at 3). Although Whitener attempted to respond to that Order by letter dated September 21, 2010, the Court never received a copy of his letter. Whitener provided the Court with a new copy of his September 21, 2010 letter on September 16, 2011. (Doc. No. 16).

## II. FACTUAL BACKGROUND

Plaintiff was transferred to ACI on April 8, 2009. (Doc. No. 1 at 6). Upon arrival, Plaintiff "refused to wear a pair of pants that were too tight, which resulted in the Plaintiff being escorted to segregation." (Id.). Sharpe and John Doe 1[2] accompanied Plaintiff to segregation. (Id.). Plaintiff states that Sharpe handled Plaintiff in a rough fashion. (Id.). He asked Sharpe "why was he pulling on the handcuffs all crazy and Officer Chad Sharpe got even rougher." (Id.). Plaintiff then "asked Sergeant Riggs was he gonna stand there and let his officer do that and Sergeant Riggs looked at the Plaintiff like he didn't exist." (Id. at 6-7).

Plaintiff alleges "[t]hat's when Officer Chad Sharpe and John Doe #1 threw the Plaintiff up against the wall and Officer Chad Sharpe made an effort to break Plaintiff's wrist by bending it back as far as he could while at the same time tightening the handcuff until it couldn't get any tighter and cut into the Plaintiff's skin." (Id. at 7). Sharpe and John Doe 1 then "slammed the

---

[2] Whitener identified John Doe 1 as Correctional Officer Kelly Pennell ("Pennell"). See (Doc. No. 16).

2

Plaintiff to the floor knocking the wind out of [him]" and chipping his tooth. (Id.). Plaintiff states that although he never resisted, Sharpe "continuously yelled 'stop resisting.'" (Id.).

Plaintiff contends that while he was on the floor, John Doe 1 bent his "left hand back attempting to inflict pain" and Sharpe "continued to inflict pain by bending [his] right hand back." (Id.). Meanwhile, "John Doe #3 applied pressure to the pressure point in the Plaintiff's neck while another officer stood on the Plaintiff's feet until an officer put shackles on the Plaintiff tight enough to cut through Plaintiff's skin and caused swelling to the Plaintiff's left foot." (Id.). As the officers "hauled the Plaintiff to the shower in C-Block[,] John Doe #4 (Officer Pennell)[3] starting laughing as he said 'where you think you at boy, we'll teach you!'" (Id.).

Plaintiff filed a grievance on April 12, 2009, detailing the excessive force that Sharpe and other officers allegedly used on him on April 8, 2009. (Doc. No. 1-1). Plaintiff alleges that on or about June 24, 2009, Sharpe refused to feed him breakfast, lunch and dinner in retaliation for Plaintiff's grievance. (Doc. No. 1 at 8). Plaintiff states that he "spoke with Sergeant Riggs about Officer Chad Sharpe's actions" and "Sergeant Riggs failed to do anything to prohibit Officer Chad Sharpe from continuing his form of retaliation." (Id.). According to Plaintiff, after he and his family complained about Sharpe's alleged retaliation, Plaintiff was transferred to another prison on July 24, 2009. (Id.).

### III. PLAINTIFF'S MOTIONS

#### A. Motion to Amend Complaint

Plaintiff filed a Motion to Amend Complaint on February 18, 2011. (Doc. No. 12). By

---

[3] Whitener identified Pennell as John Doe 1. See (Doc. No. 16).

his Motion to Amend, Plaintiff seeks to add Whitener, Sergeant Daniel Riggs ("Riggs"), and Prison Director Boyd Bennett ("Bennett") as defendants in this lawsuit. (Id. at 2). Plaintiff also seeks to add allegations that Riggs "clearly saw illegal conduct perpetrated by his officers against Plaintiff" and is therefore "culpable for his subordinate's [sic] actions." (Id. at 3). Plaintiff further alleges that Bennett and Whitener had "direct knowledge of the events at Alexander Correctional Institution, yet failed to address or curtail the violation of Plaintiff's civil rights," causing them to bear "direct responsibility for [their] employees['] miscreant and illegal conduct." (Id.). Finally, Plaintiff states that "[b]oth Whitener and Bennett allowed Plaintiff to suffer injury for at least thirty (30) days before they saw fit to move Plaintiff to another facility beyond the reach of his tormentors." (Id.). Plaintiff also seeks to amend his prayer for relief. (Id. at 4).

Federal Rule of Civil Procedure 15(a)(1) provides that a movant may amend his pleading "once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . . ." FED. R. CIV. P. 15(a)(1). Although Plaintiff's Complaint was filed over a year ago, it never was served upon any Defendant because Defendants were only recently identified for the Court. Under these unusual circumstances, the Court finds that Plaintiff is entitled to amend his Complaint as a matter of course. Therefore, Plaintiff's Motion to Amend Complaint, (Doc. No. 12), is granted.

**B.     Motion to Compel**

Plaintiff filed a Motion to Compel on March 3, 2011, (Doc. No. 13), asking the Court to mandate Whitener's compliance with the Court's Order of September 13, 2010. See (Doc. No. 8) (directing Whitener to provide the names of the John Does described in Plaintiff's

Complaint). Whitener has provided the requested names, (Doc. No. 16), and Plaintiff's Motion to Compel, (Doc. No. 13), is denied as moot.

### C. Motion for Default Judgment

Plaintiff also filed a Motion for Default Judgment, (Doc. No. 14), on the basis of Whitener's purported failure to comply with the Court's September 13, 2010 Order and Defendants' failure to make an appearance in this action. (Doc. No. 14 at 1-2). However, as aforementioned, Defendants have not yet been served with process. Additionally, Whitener was not a defendant in this case and, in any event, has already provided the names requested in the Court's September 13, 2010 Order. See (Doc. No. 16). Therefore, Plaintiff's Motion for Default Judgment, (Doc. No. 14), is denied.

### D. Motion for Appointment of Counsel

Plaintiff filed a second Motion for Appointment of Counsel on August 17, 2011 asserting, inter alia, that he cannot afford to hire an attorney, his incarceration greatly limits his ability to litigate his case, the case likely will involve substantial investigation and discovery, he does not have access to a law library, and the issues involved are complex. (Doc. No. 15 at 1). However, as the Court previously explained to Plaintiff, (Doc. No. 8), the appointment of counsel under 28 U.S.C. § 1915(e)(1) in cases brought under 42 U.S.C. § 1983 is discretionary. Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). Counsel should be appointed only in "exceptional circumstances." Id. The existence of "exceptional circumstances" depends upon two factors: type and complexity of the case and ability of the pro se litigant to present his case. Whisenant v. Yuan, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. United States District Court, 490 U.S. 296, 309 (1989).

First, this is not a complex case. Second, Plaintiff's filings continue to demonstrate that

he is articulate and capable of effectively communicating his position to the Court. In addition, Plaintiff's argument that he will need the assistance of an attorney during a trial of this matter is speculative and premature. At this time, the Court is not inclined to appoint counsel for Plaintiff. Accordingly, Plaintiff's second Motion for Appointment of Counsel, (Doc. No. 15), is denied.

**IV.     PLAINTIFF'S SECTION 1983 CLAIMS**

    **A.     Standard of Review**

A case filed under 42 U.S.C. § 1983 requires a deprivation of a right secured by federal law by a person acting under color of state law. Section 1983 applies to violations of federal constitutional rights, as well as certain limited federal statutory rights. See Maine v. Thiboutot, 448 U.S. 1, 10 (1980); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002) (holding that a right must be "unambiguously conferred" by a statute to support a Section 1983 claim). A pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, 28 U.S.C. § 1915A directs the court to conduct an initial review of civil actions by prisoners seeking relief from a governmental entity or employee. Upon such review, courts must identify cognizable claims or dismiss the complaint, or parts thereof, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

Last year, the Court reviewed Plaintiff's Complaint and found that Plaintiff's allegations against Sharpe and the John Doe defendants were sufficient to pass initial review. See (Doc. No. 8). The Court now reviews Plaintiff's Motion to Amend Complaint and finds that the allegations against Bennett and Whitener, and Plaintiff's request for damages from the North Carolina Department of Corrections, must be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1) and (2). Plaintiff's claims against Riggs, however, will not be dismissed at this stage in the litigation.

B.  **Discussion**

1.  **Sharpe and the John Doe Defendants**[4]

On September 13, 2010, this Court found that Plaintiff's allegations against Sharpe and the John Doe defendants were sufficient to pass initial review. (Doc. No. 8). However, Plaintiff has not alleged any conduct by John Doe 2. Therefore, John Doe 2 is dismissed.

2.  **Bennett and Whitener**

Plaintiff alleges that Prison Director Bennett and Superintendent Whitener had "direct knowledge of the events at Alexander Correctional Institution, yet failed to address or curtail the violation of Plaintiff's civil rights," causing them to bear "direct responsibility for [their] employees['] miscreant and illegal conduct." (Doc. No. 12 at 2-3). Plaintiff further states that "[b]oth Whitener and Bennett allowed Plaintiff to suffer injury for at least thirty (30) days before they saw fit to move Plaintiff to another facility beyond the reach of his tormentors." (Id. at 3).

It is well settled that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990); Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984); see also Sanders v. Brown, No. 06-2251, 2007 WL 4322569, at *5 (4th Cir. Dec. 11, 2007). The Fourth Circuit set forth three elements necessary to establish supervisory liability under Section 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the

---

[4] Whitener identified John Doe 1 as Correctional Officer Kelly Pennell and John Does 3 and 4 as Correctional Officer Kenyon Harrington and Correctional Case Manager Warren Nichols. See (Doc. No. 16).

alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799 (citing Miltier, 896 F.2d at 854; Slakan, 737 F.2d at 373; Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983)).

The first element of supervisory liability has three requirements: "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Id. (citing Slakan, 737 F.2d at 373). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. (citing Slakan, 737 F.2d at 373-74). Here, Plaintiff states in a conclusory fashion that Bennett and Whitener had "direct knowledge of the events at Alexander Correctional Institution." (Doc. No. 12 at 3). Plaintiff does not provide any additional factual detail with which the Court might assess his allegation. Additionally, Plaintiff does not indicate that Bennett and Whitener knew of and ignored the mistreatment of any other prisoners. Therefore, Plaintiff fails to establish that the abuse and harassment he allegedly suffered was pervasive or widespread. Accordingly, Plaintiff has not satisfied the first element of supervisory liability.

To establish the second element of supervisory liability, deliberate indifference, a plaintiff may demonstrate a supervisor's "continued inaction in the face of documented widespread abuses." Shaw, 13 F.3d at 799 (quoting Slakan, 737 F.2d at 373); see also Miltier, 896 F.2d at 848. The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because:

> [o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to

> promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

Slakan, 737 F.2d at 372-73 (internal citations and quotations omitted). Plaintiff alleges that prison staff mistreated him on two occasions. (Doc. No. 1 at 6-8) (stating that on April 8, 2009, Sharpe and the John Doe defendants abused Plaintiff, and that on June 24, 2009, Sharpe refused to feed Plaintiff breakfast, lunch, and dinner). While these two incidents likely fall short of establishing "continued inaction in the face of documented widespread abuses," Shaw, 13 F.3d at 799, for reasons set forth below, the Court need not make that determination.

The third element of supervisory liability, causation, is established when a plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff. Shaw, 13 F.3d at 799. A supervisor's failure to act in the face of a known risk does not alone establish his liability. Slakan, 737 F.2d at 376-77. Rather, causation may be found directly "where the policy commands the injury of which the plaintiff complains," or indirectly, where a person is held "liable for the natural consequences of his actions." Id. at 377 (internal citations and quotations omitted) (holding that where supervisors had knowledge of the *frequent* excessive and unregulated use of water hoses against unarmed, securely confined inmates, the plaintiff's "injuries were a natural and foreseeable consequence of the supervisors' indifference"); see also Shaw, 13 F.3d at 799 (finding that because the police officer's supervisor was aware of his "*frequent* use of excessive force, it follows that he knew that [the officer's] unchecked service on the force posed a constant and dangerous threat to the welfare of arrestees") (emphasis added).

9

Plaintiff has not alleged sufficient facts for the Court to find an "affirmative causal link" between the Bennett and Whitener's alleged inaction and the harm suffered by Plaintiff. Shaw, 13 F.3d at 799. Plaintiff does not provide any factual detail indicating that ACI's policies commanded prison staff to use excessive force on Plaintiff or to deprive him of food. Nor does Plaintiff establish that his April 8, 2009 injuries were "a natural and foreseeable consequence of [Bennett and Whitener's] indifference." Slakan, 737 F.2d at 377. Indeed, Plaintiff does not allege that Bennett and Whitener had knowledge of any mistreatment of other prisoners. Nor does Plaintiff allege abusive conduct by the Defendants pre-dating April 8, 2009. Even assuming that Bennett and Whitener became aware of the April 8, 2009 events soon thereafter, Plaintiff suffered injury on only one additional occasion. (Doc. No. 1 at 8) (stating that on June 24, 2009, Sharpe refused to feed Plaintiff breakfast, lunch, and dinner). Plaintiff's allegations therefore fall short of establishing an affirmative causal link between Bennett and Whitener's alleged inaction and the injury suffered by Plaintiff on June 24, 2009.

Without more, the allegations that Plaintiff sets forth against Bennett and Whitener in his Motion to Amend Complaint, (Doc. No. 12), fail to state a constitutional claim for relief. Therefore, these claims are dismissed under 28 U.S.C. § 1915A(b)(1) (providing for the dismissal of a complaint or claim that "is frivolous, malicious, or fails to state a claim upon which relief may be granted").

### 3. Riggs

The allegations that Plaintiff makes against Riggs in his Complaint, (Doc. No. 1), and Motion to Amend Complaint, (Doc. No. 12), are sufficient to pass initial review. Plaintiff contends that Riggs not only observed Sharpe's excessive use of force, but ignored Plaintiff when he asked Riggs whether he was going to do anything about Sharpe's conduct. (Doc. No. 1

at 6-7). Plaintiff further states that as a result of Sharpe's alleged retaliation against Plaintiff for filing a grievance, he sought assistance from Riggs. (Id. at 8). However, Plaintiff contends, "Sergeant Riggs failed to do anything to prohibit Officer Chad Sharpe from continuing his form of retaliation." (Id.).

The Court finds that the foregoing allegations may be sufficient to state a claim against Riggs for failure to intervene and intercede. See Brown v. North Carolina Dept. of Corr., 612 F.3d 720, 723 (4th Cir. 2010) (an officer's presence in the "housing block" where an inmate-on-inmate attack occurred could make him sufficiently aware of the attack to find that his failure to intercede represented deliberate indifference to a serious risk of harm); Barnard v. Piedmont Regional Jail Auth., No. 3:07-cv-566, 2009 WL 2872510, at * 5 (E.D.Va. Sept. 3, 2009) (observing that excessive force claim can be stated on basis of allegation that "the defendant was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so"); Browning v. Snead, 886 F.Supp 547, 552 (S.D. W. Va. 1995) ("A police officer may not stand by idly while a citizen's constitutional rights are violated by another officer; he has an affirmative duty to intercede on the citizen's behalf."); Thompson v. Boggs, 33 F.3d 847, 857 (7th Cir. 1994) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance."). Therefore, Plaintiff will be permitted to proceed with his allegations against Riggs.

### 6. North Carolina Department of Corrections

In his Motion to Amend Complaint, (Doc. No. 12), Plaintiff includes a request for damages from the North Carolina Department of Corrections. However, the North Carolina Department of Corrections is not a "person" under § 1983. Will v. Mich. Dep't of State Police,

491 U.S. 58, 71 (1989) ( "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). The North Carolina Department of Corrections is considered an arm of the State of North Carolina. <u>Glover v. Charlotte Correctional Center</u>, No. 3:10-cv-523-RJC, 2010 WL 4718397, at *1 (W.D.N.C. 2010); <u>Savage v. N.C. Dep't. of Corrs.</u>, No. 5:06-CV-171-FL, 2007 WL 2904182, at *15 (E.D.N.C. Sept. 29, 2007); <u>Hamilton v. Freeman</u>, 147 N.C. App. 195, 204 (2001) (noting that the North Carolina Department of Corrections is part of North Carolina's executive branch). Accordingly, the North Carolina Department of Corrections cannot be held liable under § 1983.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion to Amend Complaint, (Doc. No. 12), is **GRANTED;**

2. Plaintiff's Motion to Compel, (Doc. No. 13), is **DENIED as moot**;

3. Plaintiff's Motion for Default Judgment, (Doc. No. 14), is **DENIED**;

4. Plaintiff's Motion for Appointment of Counsel, (Doc. No. 15), is **DENIED**;

5. Plaintiff's allegations against John Doe 2, Bennett and Whitener, and Plaintiff's request for damages from the North Carolina Department of Corrections, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (2);

6. The Clerk shall add Correctional Officers Kelly Pennell and Kenyon Harrington, Sergeant Daniel Riggs and Case Manager Warren Nichols as Defendants to this action, shall modify its records to reflect such additions, and shall prepare process for all Defendants and deliver same to the U.S. Marshal;

7. The U.S. Marshal shall serve process upon Defendants Sharpe, Riggs, Pennell, Harrington, and Nichols at the Alexander Correctional Institution;

8. Defendants shall respond to Plaintiff's allegations in accordance with the Federal

Rules of Civil Procedure; and

9. The Clerk shall send a copy of this Order to Plaintiff.

Signed: September 28, 2011

Robert J. Conrad, Jr.
Chief United States District Judge