UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-cv-37-RJC

| | |
|---|---|
| LAQUEZ SIMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| CHAD SHARPE, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on a motion for summary judgment by Defendants Kenyon Harrington, Warren Nichols, Kelly Pennell, Daniel Riggs, and Chad Sharpe. (Doc. No. 32).

**I.    BACKGROUND**

A.    Procedural Background

On March 24, 2010, Plaintiff, a prisoner of the State of North Carolina, filed this action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that, while an inmate at the Alexander Correctional Institution ("ACI") in Taylorsville, North Carolina, the moving Defendants, all correctional officers at ACI, violated his Eighth Amendment rights by using excessive force against him on April 8, 2009, and by refusing to serve him meals on June 25, 2009, in retaliation for Plaintiff's filing a grievance regarding the alleged excessive force. Plaintiff seeks the following relief: a declaration that his constitutional rights were violated; preliminary and permanent injunctions ordering Defendants to attend and complete anger management classes before returning to their positions; a preliminary injunction ordering that Plaintiff not be housed at the ACI; and judgment in Plaintiff's favor allowing nominal, compensatory, and punitive

damages. (Doc. No. 1 at 9).

On September 28, 2011, the Court granted Plaintiff's motion to amend/correct complaint, (Doc. No. 17), and Defendants filed an answer on October 26, 2011, (Doc. No. 30). On January 18, 2012, this Court issued an order allowing the parties thirty days to conduct discovery. (Doc. No. 31). On February 16, 2012, Defendants filed the pending motion for summary judgment. (Doc. No. 32). Plaintiff filed a motion for extension of time to file his response, which the Court granted, and a separate motion to appoint counsel, which the Court denied. (Doc. No. 39). Plaintiff filed his brief and supporting materials in response to the summary judgment motion on April 2, 2012. (Doc. No. 40).

B. Factual Background

Defendants' summary judgment materials include the pleadings and all attachments and the affidavits of non-parties ACI Unit Manager Shawn Blackburn, Dr. James Clare, and Nurse Supervisor Patterson.[1] Plaintiff's summary judgment materials include his brief in response to the summary judgment motion, his sworn Declaration, and a Statement of Disputed Facts.

The following facts are taken in the light most favorable to Plaintiff. 1. Facts Related to the Excessive Force Claim

The incident at issue occurred on April 8, 2009, while prison officials were transferring Plaintiff from another prison facility to ACI. It is undisputed that during the transfer Plaintiff

---

[1] Defendants state that "[a]lso available to the Court is a disc with videotape footage showing the use of force incident as recorded by several cameras from different locations, as testified to in Blackburn's Affidavit. The disc has not been provided to Plaintiff because he has no means of viewing it. Also available to the Court are radiographs of Plaintiff's teeth, as testified to in Dr. Clare's Affidavit." (Doc. No. 33 at 5). The Court will not consider these items because they have not been filed as exhibits to Defendants' summary judgment motion.

2

refused to wear a pair of pants that he claims were too tight.  (Doc. No. 40-2 at ¶¶ 5; 6: Simmons Declaration; Doc. No. 33-1 at ¶ 7: Blackburn Affidavit).

Because of Plaintiff's refusal to wear the pants, the receiving area staff concluded that Plaintiff should be moved to the Segregation Unit and broadcast a "Code 3," which stops the movement of all other inmates.  (Doc. No. 33-1 at ¶¶ 6; 7: Blackburn Affidavit).  Furthermore, a Code 3 requires "that the inmate be restrained and that two staff members must escort the inmate in restraints to the designated area."  (Id.).  Plaintiff was handcuffed and Officers Sharpe and Pennell held his upper arms as they walked to the Segregation Unit, while non-party Sergeant Harris and Defendant Riggs walked close behind.  (Id. at ¶ 8).

Plaintiff states that when he arrived at the Segregation Unit, Officer Sharpe and another officer (presumably Pennell) started escorting Plaintiff to his cell, with other officers following them.  (Doc. No. 40-2 at ¶ 8).  According to Plaintiff, one officer saw that Plaintiff was holding the tags to his shipping bags in his hand, and the officer shouted, "What'cha got in your hand?" (Id.).  According to Plaintiff, at that point, the officer snatched the tags out of Plaintiff's hand. (Id.).  Plaintiff states that he "never resisted or attempted to stop [the officer]."  (Id. at ¶ 9).

Plaintiff contends that Defendant Sharpe then "began to get rough with me for no reason."  (Id.).  Plaintiff states that he asked Sharpe why he was "pulling on the handcuffs all crazy," and at that point Sharpe "got even rougher."  (Id. at ¶ 11).  Plaintiff states that he asked Defendant Riggs "was he gonna stand there and let his officer do that and Riggs looked at me like I didn't exist."  (Id. at ¶ 11(A)).  Plaintiff states that at that point, and "[w]ithout warning, [Sharpe] and another officer threw me against the wall."  (Id. at ¶ 11(B)).  Plaintiff contends that "[Sharpe] made an effort to break my wrist by bending it back as far as it could go while at the same time he tightened the handcuffs until they couldn't get any tighter," and "[t]he handcuffs

3

cut through [his] skin." (Id. at ¶¶ 14; 15). Plaintiff states that he then heard one of the officers say, "Okay, you ready?" and that Defendant Sharpe and another officer "slammed me to the floor." (Id. at ¶ 16). Plaintiff further attests that "[e]ven though I never resisted defendant [Sharpe] continuously yelled, 'stop resisting.'" (Id. at ¶ 17).

In their summary judgment materials, Defendants do not mention anything about Plaintiff having tags in his hand. Defendants state that Plaintiff began resisting the officers as they entered the Segregation Unit by "swinging or twisting his upper body, and pulling his arms into his sides." (Doc. No. 33-1 at ¶ 9: Blackburn Affidavit). Defendant Sharpe ordered Plaintiff to stop resisting, but Plaintiff cursed at Sharpe and continued to resist. (Id.). Defendants Sharpe and Pennell "placed Plaintiff against the wall in an attempt to maintain control of him." (Id.).

Defendants state that the officers then placed Plaintiff on the floor after he "continued to resist by turning towards staff and making a noise as if he intended to spit on Sharpe." (Id. at ¶ 10). Defendant Nichols helped to hold Plaintiff on the floor. (Id.). Sergeant Harris then directed Defendant Harrington to place leg restraints on Plaintiff. (Id. at ¶ 11). Because Plaintiff seemed to be mad at Defendant Sharpe, Sergeant Harris ordered that Officer Shumate relieve Sharpe. (Id. at ¶ 12). Defendant Pennell and Shumate then escorted Plaintiff to the shower. (Id. at ¶ 13).

Plaintiff contends that, during the incident, Defendants "caused my tooth to chip along with cuts on my wrist from the handcuffs being too tight. As well as back pain." (Doc. No. 40-2 at ¶ 18: Simmons Declaration). Finally, Plaintiff contends that, "[c]ontrary to defendants' affidavits, during this event I did not resist or threaten the officers in any fashion, however that didn't prevent the defendants from applying pressure to pressure points in my neck or standing on my feet until they put shackles around my ankles too tight." (Id. at ¶ 19).

4

ACI Unit Manager Shawn Blackburn was assigned to investigate the April 8, 2009, incident and Blackburn obtained written statements from numerous ACI staff members and conducted personal interviews. (Doc. No. 33-1 at ¶¶ 5-6: Blackburn Affidavit). During his investigation, Blackburn obtained written statements from nonparties Sergeant Harris and Nurse Denise Love-Adams. (Id. at ¶ 6). Blackburn also obtained written statements from Defendants Riggs, Sharpe, Pennell, Nichols, and Harrington. (Id.). According to Blackburn, "Plaintiff refused to make a statement, and his refusal was witnessed by staff." (Id.). Blackburn noted that the incident lasted approximately three minutes. (Id. at ¶ 15). He ultimately concluded that the staff "acted in accordance with prison policy and Alexander S[tandard] O[perating] P[rocedure]," (id. at ¶ 16), and "used only the minimum amount of force needed to prevent injury to staff and maintain or restore order," (id. at ¶ 17).

Plaintiff's medical reports indicate that a nurse treated Plaintiff shortly after the incident. (Doc. No. 33-2 at ¶ 6: Patterson Affidavit; see also Ex. B to Doc. No. 33-2). The nurse noted that Plaintiff was "defiant and argumentative" and complained of pain to his right hand, and the nurse observed "several superficial cuts on Plaintiff's right wrist." (Id.). The nurse provided antibiotic ointment and noted on a Health Screening form that Plaintiff's right hand was swollen and he complained of numbness. (Id.). The following day, Plaintiff was seen by a nurse and complained only of "dry, cracked feet." (Id. at ¶ 8).

Plaintiff's medical reports also show that from April 9, 2009, to April 30, 2009, medical staff checked on Plaintiff daily, and he voiced no complaints. (Id. at ¶ 9). Plaintiff did submit a sick call request on April 15, 2009, during which he complained about back pain and about his tooth being chipped. (Doc. No. 33-3 at ¶¶ 4; 10: Clare Affidavit). His dental records show that he first reported a similar injury in 2005, and repairs were made at that time. (Id. at ¶ 5).

5

Plaintiff reported subsequent chips in February 2009, which were repaired without anaesthesia and were of "minimal injury." (Id. at ¶ 9). Dr. James Clare, Dental Director for the North Carolina Division of Adult Correction, informed Plaintiff that "if the repairs broke, no further repairs would be made." (Id.). Plaintiff requested repair of the same two teeth in May 2009, but declined the dentist's offer to smooth the teeth. (Id. at ¶ 11). Notwithstanding the dentist's instruction that no further repairs would be made, Plaintiff's teeth were repaired again in July 2010, without use of anaesthesia. (Id. at ¶¶ 9-12). Dr. Clare states that any injury to Plaintiff's teeth on April 8, 2009, was at most minimal. (Id. at ¶ 14).

### 2. Facts Related to Plaintiff's Retaliation Claim

Plaintiff filed a grievance arising out of the April 8, 2009, incident. Plaintiff contends that in retaliation for filing the grievance, Defendant Sharpe retaliated against Plaintiff on or about June 24, 2009, when Sharpe refused to feed him breakfast, lunch, and dinner. According to Plaintiff, around lunchtime on that day, Defendant Sharpe told Officer Brown not to provide lunch to Plaintiff until Plaintiff stood at the door. Plaintiff contends that there is no such policy required in order for prisoners to receive their meals. (Doc. No. 1 at 8). Plaintiff reported Defendant Sharpe's behavior to Defendant Riggs, who failed to take action against Sharpe.

On summary judgment, Defendants state that Plaintiff did, in fact, receive meals on June 24, 2009, but that his meals were delayed because he "ignored direct orders to show his hands and walk to his cell door," that the duty sergeant was notified, and that Plaintiff was served by other staff members. (Doc. No. 33 at 4). Finally, it is undisputed that Plaintiff was transferred to another prison on or about the same day. (Doc. No. 1 at 8; Doc. No. 33 at 4).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

III. DISCUSSION
7

Case 5:10-cv-00037-RJC   Document 45   Filed 09/28/12   Page 7 of 12

A.      Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, 130 S. Ct. 1175, 1178-79 (2010) (per curiam).  To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind.  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  In adjudicating an excessive force claim, the court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously or sadistically for the very purpose of causing harm."  Wilkins v. Gaddy, 130 S. Ct. at 1178; see also Albers, 475 U.S. at 320-21.  Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  Wilkins, 130 S. Ct. at 1178-79.  In Wilkins, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry.  "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation."  The extent of injury may also provide some indication of the amount of force applied.  As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.

8

> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 1178-79 (citations omitted).

Defendants are entitled to summary judgment on Plaintiff's excessive force claim. First, Defendants have presented evidence showing that they adhered to the prison's internal procedures in order to safely transfer Plaintiff, as well as to maintain the safety of other prisoners and the prison's staff. Defendants' evidence shows that even though Plaintiff was in handcuffs he continued to pose a threat and was acting as if he was preparing to spit on Defendant Sharpe. Defendants note that only after perceiving Plaintiff's intent to spit on Sharpe did Defendants take Plaintiff to the floor and hold him there until leg irons could be obtained. Furthermore, the relationship between the need for force and the amount of force used was closely matched. Only minimal hands-on force was used to push Plaintiff against the wall and then take him to the floor in order to try to maintain control of him. No other means of force were employed.

Plaintiff contends in his Declaration that he never resisted the officers during the entire incident, nor was he being disobedient towards the officers. He further contends that the officers "threw" him up against the wall and then "slammed" him onto the floor. (Doc. No. 40-3 at 2). Plaintiff contends that these statements in his Declaration raise a genuine issue of material fact precluding summary judgment. See (Doc. No. 40-1 at 3). The Court does not agree. First, as to Plaintiff's contentions regarding the amount of force used by Defendants, the evidence of record shows that Plaintiff suffered no injury other than superficial cuts and some swelling on Plaintiff's right hand. Plaintiff's contentions that Defendants "threw" him against the wall and then "slammed" him onto the floor are not supported by the objective evidence of Plaintiff's minimal injury. Additionally, Plaintiff contends that Defendant Harrington applied leg irons so

9

tightly that the irons cut through Plaintiff's skin. Defendants' summary judgment materials show, however, that Plaintiff did not report any injury to his legs, ankles, or feet, and no such injury was observed or treated by medical staff. Similarly, Plaintiff contends that his tooth was chipped during the incident, but the medical evidence of record clearly belies this contention. Again, at most, Plaintiff suffered from superficial cuts and some swelling to his hand. Although Wilkins made clear that the extent of the injury sustained by the plaintiff is not dispositive in the analysis, it is still a factor which courts can consider when determining whether the use of force in a particular situation was necessary or excessive. Lawson v. Miles, No. 1:11cv949, 2012 WL 3242349, at *3 (E.D. Va. Aug. 6, 2012); see also Wilkins, 130 S. Ct. at 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.").

Here, the very minimal injuries sustained by Plaintiff simply do not support Plaintiff's contentions in his Declaration as to the amount of force used by Defendants. Plaintiff emphasizes that he was in handcuffs during the incident, and he concludes that he could not, therefore, have been any threat to Defendants. Defendants have presented evidence, however, that Plaintiff was "swinging or twisting his upper body, and pulling his arms into his sides," (Doc. No. 33-1 at ¶ 9: Blackburn Affidavit), and that he was acting as if he was preparing to spit at Defendant Sharpe. Although Plaintiff denies that he resisted the officers, he does not deny Defendants' contentions that he was preparing to spit at Defendant Sharpe during the incident. Furthermore, he has admitted that just before the incident he was being sent to the Segregation Area for refusing to wear a pair of pants. Here, the overwhelming evidence of record shows that, contrary to Plaintiff's conclusory assertions, he was resisting and was being disobedient when Defendants used force against him. The evidence further shows that Defendants applied

10

reasonable force, proportional to the need for such force, in a good faith effort to maintain and restore discipline, and not maliciously and sadistically for the very purpose of causing harm.

In sum, the Court finds that Plaintiff has not raised a genuine issue of material fact as to whether Defendants used excessive force against him. Rather, the uncontroverted evidence shows that Defendants used the amount of force necessary to restore order and maintain discipline.[2] Therefore, Defendants are entitled to summary judgment as to Plaintiff's excessive force claim.[3] Accord McMillian v. LeConey, No. 5:09cv175, 2011 WL 2144628, at *9 (E.D.N.C. May 31, 2011) (granting summary judgment to the defendant in an excessive force case where the plaintiff contended that he did not resist the officer in any way and that the officer "slammed" him against a wall and then "slammed" him onto the ground, where he had no discernible injuries), aff'd, 455 F. App'x 295 (4th Cir. 2011) (unpublished).

B.   Plaintiff's Retaliation Claim

In his Complaint, Plaintiff alleged that Defendant Sharpe refused to serve Plaintiff meals on June 24, 2009, in retaliation for Plaintiff's grievances related to his claim of excessive force during the April 8, 2009, incident, and that Defendant Riggs failed to follow up on the alleged retaliation. In support of the motion for summary judgment, Defendants contend that Plaintiff was, in fact, served three meals on June 24, 2009, but that the meals were delayed because

---

[2] The Court notes that even if Plaintiff could withstand summary judgment as to the other Defendants on the excessive force claim, Plaintiff has not alleged that the moving Defendant Riggs was personally involved in the alleged use of excessive force, and Plaintiff has presented no evidence to show that Riggs could be held liable under a theory of supervisory liability.

[3] Defendants also contend that they are entitled to qualified immunity. Because Plaintiff has not raised a genuine issue of material fact as to whether his constitutional rights were violated in the first instance, the Court need not address whether Defendants are entitled to qualified immunity.

Plaintiff failed to follow orders.

A plaintiff alleging that government officials retaliated against him in violation of his constitutional rights must demonstrate, <u>inter alia</u>, that he suffered some adversity in response to his exercise of protected rights. <u>Am. Civil Liberties Union of Md. v. Wicomico Cnty., Md.</u>, 999 F.2d 780, 783 (4th Cir. 1993) (internal quotation marks and citations omitted). A showing of adversity is essential to any retaliation claim. (<u>Id.</u>). Here, Plaintiff has not presented any arguments as to the retaliation claim in his opposition brief. Therefore, he is deemed to have abandoned his retaliation claim. <u>See</u> FED. R. CIV. P. 56(e). In any event, the Court has not found any authority for the proposition that delayed meals during the course of one day violate a prisoner's constitutional rights. Indeed, receiving a delayed meal is hardly the type of adversity that is required to prove a retaliation claim. In sum, Defendants are entitled to summary judgment as to Plaintiff's retaliation claim.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' motion for summary judgment, (Doc. No. 32), is **GRANTED**, and this action is **DISMISSED** with prejudice.

Signed: September 28, 2012

Robert J. Conrad, Jr.
Chief United States District Judge